# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA DIANE FOWLER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:17-cv-01253-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 8).

At the hearing on November 15, 2018, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

Plaintiff challenges the decision of the Administrative Law Judge ("ALJ") on two grounds: (1) that the ALJ improperly rejected the opinion of examining physician Dr. DeBattista regarding Plaintiff's ability to interact with coworkers and the public; and (2) that the ALJ

1

improperly found that Plaintiff could perform the occupation of sorter despite only having the ability to frequently handle, rather than constantly handle, small items.

Dr. DeBattista conducted a Comprehensive Psychiatric Consultative Evaluation of Plaintiff on February 20, 2014. His opinion is set forth in Exhibit 6F of the record. In his functional assessment, Dr. DeBattista provided the following opinion: "The claimant's ability to relate and interact with coworkers and the public is markedly impaired." (A.R. 366). It is also worth noting that Dr. DeBattista opined that "[t]he claimant's ability to accept instructions from supervisors is moderately impaired," and "[t]he claimant's ability to perform work activities without special or addition [sic] supervision is moderately impaired." (A.R. 366).

The ALJ summarized Dr. DeBattista's opinion and then stated the following:

> The undersigned does not accept the marked limitation in interacting with coworkers or the public, as it is not supported by other medical evidence or even the claimant's own statements. She has stated she prefers to be alone and has difficulty getting along with coworkers, but she has been able to work at times, had a long-term relationship with another individual, and attends weekly religious services. The treatment record does not show her having significant difficulty with her multiple health care providers. The above residual functional capacity finding reasonably accommodates any difficulty the claimant may have in getting along with the public, coworkers, or supervisors.

(A.R. 31). The ALJ incorporated the following relevant limitation into the residual functional capacity ("RFC"): "The claimant can tolerate . . . occasional interaction with the general public, coworkers, and supervisors." (A.R. 24).

According to the Ninth Circuit, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater 81 F.3d 821, 830–831, (9th Cir. 1995), as amended (Apr. 9, 1996).

The Court finds the following statements by claimant relevant to evaluate the ALJ's first reason regarding inconsistency with the claimant's own statements: Plaintiff has previously been employed as a commercial bus driver, hotel housekeeper, hotel receptionist, and group home support, (A.R. 46-47). She was fired from her position at the hotel front desk. (A.R. 49). Her mother asked her to stop doing her care. (A.R. 51). She did general housekeeping and grocery

2

shopping when caring for her mother shortly before the hearing. (A.R. 50). She goes to group therapy twice a month. (A.R. 55). She goes to church every Sunday, with approximately 150 other people, for an hour and a half. (A.R. 68). She goes shopping once a week, (A.R. 69), late at night when there is no traffic and no lines, (A.R. 69). She also regularly attends a group for someone that has mental illness and drug abuse. (A.R. 71). She walks her dog once a week. (A.R. 71). She has difficultly being around other people because she feels unsafe. (A.R. 74).

Turning to the ALJ's next reason, it is true that Plaintiff has been able to work at times, as described briefly above. It is also true that on March 9, 2013, she reported that "she might hurt someone she works with," who has reprimanded her. (A.R. 459). Furthermore, on May 20, 2013, Plaintiff reported that "she either quits or is fired from every job, due to conflicats [sic] with superiors or co-workers, emotional reactivity, or absence from work." (A.R. 461).

As the ALJ explained, Plaintiff also had a long term romantic relationship in the past. However, Plaintiff reported in June 2013 that she was "feeling triggered by her boyfriend's occasional rigid attitude/behavior." (A.R. 422). In January 2014, she also reported that she "get's [sic] triggered by ex-boyfriend's expression similar to her father being angry." (A.R. 435). In October 2015, Plaintiff reported "to have moved to Merced on September 20, 2015 to live in with boyfriend of a 5 year [sic] relationship. Consumer reported to have ended the 5 year [sic] relationship after being threatened by boyfriend. (Consumer reported to have called the Sheriff in October 10, 2015)." (A.R. 754).

Regarding her relationship with health care providers, Plaintiff points to times where she was reportedly frustrated and agitated during certain doctor's visits. (A.R. 445) ("Client was frustrated with length of paperwork in lobby and length of intake . . . ."); (A.R. 470) ("Clt [sic] was angry about this and stated, 'You are supposed to give ME the answers.'"); (A.R. 580) ("She became angry when I asked her where she was working."); (A.R. 648) ("Hostile" checked related to attitude). Plaintiff also points to multiple examples where Plaintiff was tearful and depressed at her medical appointments.

In response, the Commissioner argues that her symptoms improved over time, and numerous medical records show that Plaintiff was pleasant and cooperative at her appointments.

3

(ECF No. 18, at p. 11).

After reviewing this evidence, the Court concludes that the ALJ's reasons are legally sufficient. The Court appreciates that the record contained mitigating evidence regarding each of the reasons given, and that another ALJ may very well have come to a different conclusion based on the evidence. For example, Plaintiff had a long relationship, but a troubled one. Plaintiff worked multiple jobs, but was often fired. Plaintiff's relationships with her medical providers were mixed. Nevertheless, there is substantial evidence for the ALJ's specific reasons why a limitation to "occasional interaction with the general public, coworkers, and supervisors" was appropriate, rather than fully adopting Dr. DeBattista's "marked limitations" on the ability to relate and interact with coworkers and the public. As discussed above, Plaintiff attends church, goes shopping, goes to group therapy, walks her dog, and other interactions with the public on a regular basis. She has repeatedly taken on jobs that include a substantial level of interaction with coworkers and the public, despite mixed results. She finished a 5-year relationship shortly before the hearing, although it ended in a dramatic way. These examples, cited by the ALJ, provide sufficiently specific and legitimate reasons to somewhat mitigate the opinion of Dr. Battista.

As to the second issue, the Court agrees with Plaintiff that the ALJ's finding on the number of available jobs was not consistent with the Dictionary of Occupational Titles. The RFC includes a limitation that "[t]he claimant can *frequently* handle (gross manipulation) or finger (fine manipulation) items no smaller than a paper clip." (A.R. 23) (emphasis added). The ALJ found that there are jobs that exist in significant numbers in the National Economy in part based on finding that Plaintiff could perform the occupation of "Sorter of Agriculture Produce." (A.R. 32). However, the parties agree that the occupation of sorter requires "*constant*" handling (not frequent handling). See 529.687-186 SORTER, AGRICULTURAL PRODUCE, DICOT 529.687-186 ("Handling: Constantly - Exists 2/3 or more of the time"). The vocational expert did not give an opinion as to which of the sorter positions would be available for someone with only frequent handling in one hand. Moreover, the Court has read the description of sorter and cannot determine in its lay opinion whether it requires constant handling of both hands.

The Court also declines to hold that the error was harmless based on the presence of

approximately 8,500 jobs nationally in the other acceptable occupation of final inspector. Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 529 (9th Cir. 2014) ("the ALJ's finding that 25,000 national jobs is sufficient presents a close call.").

The Court will thus remand the case to the ALJ to reconsider whether there are jobs that exist in significant numbers in the national economy that the claimant can perform in light of the requirement of constant handling for a sorter as discussed above.

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: **November 20, 2018**         /s/ Eric P. Grojean
                                     UNITED STATES MAGISTRATE JUDGE